IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| JACKIE SUE LADAPO, § § Plaintiff, § § § Civil Action No. 3:14-CV-2602-D VS. § § TARGET STORES, INC., § § Defendant. § | |

MEMORANDUM OPINION
AND ORDER

This is a removed action in which the plaintiff alleges a premises liability claim based in part on the necessary-use exception announced by the Supreme Court of Texas in *Austin v. Kroger Texas, L.P.*, 465 S.W.3d 193 (Tex. 2015). Concluding that the plaintiff has failed to meet her summary judgment burden regarding the necessary-use exception, and that the evidence otherwise conclusively establishes that the defendant owed her no duty to warn or make the premises safe, the court grants defendant's motion for summary judgment and dismisses this action by judgment filed today.

I

Because the background facts and procedural history of this case are set out in two prior memorandum opinions and orders, *see Ladapo v. Target Stores, Inc.*, 2016 WL 2609996 (N.D. Tex. May 6, 2016) (Fitzwater, J.) ("*Ladapo II*"); *Ladapo v. Target Stores, Inc.*, 2014 WL 6617031 (N.D. Tex. Nov. 21, 2014) (Fitzwater, J.) ("*Ladapo I*"), *vacated and remanded*, 615 Fed. Appx. 842 (5th Cir. 2015), the court will limit its discussion to what is

necessary to understand this decision.

Plaintiff Jackie Sue Ladapo ("Ladapo") was employed by Boots Retail USA, Inc. ("Boots"), an independent contractor of defendant Target Stores, Inc. ("Target").[1] In her position as "senior beauty advisor," Ladapo was responsible for marketing Boots cosmetics products to Target customers by providing them personalized and detailed information through product demonstrations and makeovers. At Target's store in Cedar Hill, Texas,[2] Ladapo stored all of the products she needed to do her job—testers, samples, journal book, makeup brushes, and other supplies—in a large white drawer. She contends that on several occasions prior to June 14, 2012, she and other Target employees had complained to Target that the drawer did not function properly and would "pull out and fall" without warning. Am. Compl. ¶ 4(D)(ii). On June 14, 2012 Ladapo was injured when the drawer came all the way out and fell on her foot.

Ladapo filed this premises liability action against Target in state court. Target removed the case and filed a motion for judgment on the pleadings under Fed. R. Civ. P. 12(c). In *Ladapo I* the court granted Target's motion, holding that Target "owed no duty to warn Ladapo about a defective drawer that she already knew was defective, and the

---

[1]In deciding this motion, the court views the evidence in the light most favorable to Ladapo as the summary judgment nonmovant and draws all reasonable inferences in her favor. *See, e.g., Owens v. Mercedes-Benz USA, LLC*, 541 F.Supp.2d 869, 870 n.1 (N.D. Tex. 2008) (Fitzwater, C.J.) (citing *U.S. Bank Nat'l Ass'n v. Safeguard Ins. Co.*, 422 F.Supp.2d 698, 701 n.2 (N.D. Tex. 2006) (Fitzwater, J.)).

[2]Ladapo worked at numerous Target locations in the Dallas-Fort Worth area, traveling to two to four Target stores each day.

hazardous nature of which was not concealed." *Ladapo I*, 2014 WL 6617031, at *2. Ladapo appealed. Several months after the court decided *Ladapo I*, the Supreme Court of Texas issued its decision in *Austin*, clarifying the law regarding premises liability generally, and recognizing a necessary-use exception. In her appeal of *Ladapo I*, Ladapo argued that the necessary-use exception announced in *Austin* applied to her case. Without expressing a view on whether the necessary-use exception could or did apply, the Fifth Circuit remanded the case to this court with instructions to "address the pleadings, including any requests to amend the pleadings, anew in light of the decision in *Austin*." *Ladapo v. Target Stores, Inc.*, 615 Fed. Appx. 842, 843 (5th Cir. 2015) (per curiam).

Following the Fifth Circuit's remand, Ladapo amended her complaint and Target moved anew to dismiss under Rule 12(b)(6). In *Ladapo II* the court concluded that the allegations in the amended complaint were sufficient to plausibly allege a premises liability claim based on the necessary-use exception recognized in *Austin*:

> At this stage of the case, it is sufficient that Ladapo has alleged that it was necessary for her to use the white drawer that caused her injury and that Target should have anticipated that she was unable to take measures to avoid the risk. This is all *Austin* appears to require to state a claim under the necessary-use exception.

*Ladapo II*, 2016 WL 2609996, at *3 (footnote omitted). The court noted, however, that it was not "suggest[ing] how it would rule on a motion for summary judgment or what it deems to be the probable verdict at trial." *Id.* at *3 n.5.

Target now moves for summary judgment on Ladapo's premises liability claim. It

contends that it owed no duty to warn or protect Ladapo because she has admitted that she was aware of the hazard; that the necessary-use exception does not apply to Ladapo's claim; and that there is no evidence that Target had notice of the degree of the defect. Ladapo opposes Target's motion.

II

When a party moves for summary judgment on claims on which the opposing party will bear the burden of proof at trial, the moving party can meet its summary judgment obligation by pointing the court to the absence of admissible evidence to support the nonmovant's claims. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the moving party does so, the nonmovant must go beyond her pleadings and designate specific facts showing there is a genuine issue for trial. *See id.* at 324; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam). An issue is genuine if the evidence is such that a reasonable jury could return a verdict in the nonmovant's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The nonmovant's failure to produce proof as to any essential element of a claim renders all other facts immaterial. *See TruGreen Landcare, L.L.C. v. Scott*, 512 F.Supp.2d 613, 623 (N.D. Tex. 2007) (Fitzwater, J.). Summary judgment is mandatory if the nonmovant fails to meet this burden. *Little*, 37 F.3d at 1076.

III

The parties primarily dispute whether Target had any duty with respect to Ladapo, an invitee on Target's premises.³

A

Under Texas law, a landowner has a duty to "make safe or warn against any concealed, unreasonably dangerous conditions of which the landowner is, or reasonably should be, aware but the invitee is not." *Austin*, 465 S.W.3d at 203. The Supreme Court of Texas explained in *Austin*:

> [t]his general rule is consistent with the reasons for imposing a duty on landowners in the first place. The landowner is typically in a better position than the invitee to be aware of hidden hazards on the premises, so the law mandates that the landowner take precautions to protect invitees against such hazards, to the extent the landowner is or should be aware of them. . . . When the condition is open and obvious or known to the invitee, however, the landowner is not in a better position to discover it. When invitees are aware of dangerous premises conditions—whether because the danger is obvious or because the landowner provided an adequate warning—the condition will, in most cases, no longer pose an unreasonable risk because the law presumes that invitees will take reasonable measures to protect themselves against known risks, which may include a decision not to accept the invitation to enter onto the landowner's premises. This is why the Court has typically characterized the landowner's duty as a duty to make safe or warn of unreasonably dangerous conditions that are not open

---

³Ladapo maintains that she was an invitee, not an employee, of Target. Even if she could be considered an employee of Target, however, the court's analysis would be the same because, under Texas law, "generally, an employer has the same premises-liability duty to its employees as other landowners have to invitees on their premises." *Austin*, 465 S.W.3d at 201-02 (footnote omitted).

and obvious or otherwise known to the invitee.

*Id.* (citations omitted).

B

The summary judgment evidence is undisputed that Ladapo was aware of the hazardous condition of the drawer that caused her injury. Ladapo testified at her deposition that, before the June 14, 2012 incident (the "Incident"), she experienced the following problem: "[t]he drawer just coming out and me having to brace myself so it wouldn't come all the way out." D. App. 13. In response to the question, "describe how it was malfunctioning before the day of the [Incident]," Ladapo stated: "As I said before, when I went to pull the drawer out, I always had to brace myself." *Id.* at 16. Documentary evidence also establishes that, before the Incident, Ladapo knew about the drawer's propensity to come all the way out. In April 2010 she left a note for a Target employee that stated: "Terry, please have Large White Drawer replaced or fixed because *it's dangerous*. It continues to be off track when pulled out. Even if I pull it out slowly." *Id.* at 32 (emphasis added). In September 2010 Ladapo left a note for a Target employee that stated: "Large Drawer still [a] problem. It rolled out on me. Please fix." *Id.* at 31. And on April 12, 2012 Ladapo left a note that stated: "The Large, White, Drawer continues to be a problem. *I believe it's dangerous*. . . . It rolls out o[n] me." *Id.* at 35 (emphasis added).

Ladapo does not dispute that she knew the drawer was dangerous. She argues instead that because *Target* knew the drawer was dangerous, it had a duty to "take whatever action was reasonably prudent under the circumstances to reduce or to eliminate the unreasonable

- 6 -

risk from that condition, *i.e.*, to keep the large, white drawer with no stops that rolls out and/or falls out from failing by replacing and/or repairing it." P. Br. 6.

But this is not the law in Texas. As the Supreme Court of Texas made clear in *Austin*, a landowner has a duty to warn *or* make the premises safe, "but not both." *Austin*, 465 S.W.3d at 203 (quoting *State v. Williams*, 940 S.W.2d 583, 584 (Tex. 1996)). In other words, a landowner does not have an absolute duty to make a dangerous premises safe; it is sufficient for a landowner to warn its invitees "against any concealed, unreasonably dangerous conditions of which the landowner is, or reasonably should be, aware *but the invitee is not*." *Id.* at 203 (emphasis added). And when the invitee is already aware of the unreasonably dangerous condition on the premises, the landowner has no duty to warn her of that condition. *Id.* at 204 ("[S]ince there is no need to warn against obvious or known dangers, a landowner generally has no duty to warn of hazards that are open and obvious or known to the invitee."). In this case, it is undisputed that Ladapo was well aware of the unreasonably dangerous condition presented by the malfunctioning large white drawer.

Ladapo contends that, because Target contractually agreed to maintain the Boots fixtures installed in its stores, it had "a contractual duty to repair and/or replace the drawer." P. Br. 2. Under Texas law, the general rule is that only parties to a contract have the right to complain of a breach thereof, "with the exception that a nonparty who proves the contract was made for [her] benefit, and that the contracting parties intended [she] benefit from the contract, may bring an action on the contract as a third party beneficiary." *Prize Energy Res., L.P. v. Cliff Hoskins, Inc.*, 345 S.W.3d 537, 551 (Tex. App. 2011, no pet.) (citing cases); *see*

*also Wells v. Dotson*, 261 S.W.3d 275, 284 (Tex. App. 2008, no pet.). Accordingly, to recover for breach of contract, "the plaintiff must either be in privity of contract with the defendant or be a third-party beneficiary entitled to enforce the contract." *Allan v. Nersesova*, 307 S.W.3d 564, 571 (Tex. App. 2010, no pet.) (citing *O.A.I.C. Commercial Assets, L.L.C. v. Stonegate Vill., L.P.*, 234 S.W.3d 726, 738 (Tex. App. 2007, pet. denied)). It is undisputed that Ladapo was not a party to the Amended and Restated Supply Agreement ("Agreement"), which she includes in her summary judgment appendix. And although in Texas contractual duties can sometimes extend to third-party beneficiaries,[4] Ladapo neither pleads nor argues that she was a third-party beneficiary of the Agreement. Accordingly, the court rejects Ladapo's attempt to establish that Target owed her a duty based on the terms of the Agreement.

Finally, Ladapo contends that "[i]t was not open and obvious that the large, white drawer would pull open and fall onto her foot; [Ladapo] was not able to tell simply by viewing the large white drawer from the exterior, whether or not it was in working order." P. Br. 8. The court considered, and rejected, a similar argument in *Ladapo I*, and nothing in the summary judgment record undermines its reasoning:

---

[4]Under Texas law, "[a] third party may recover on a contract made between other parties only if the parties intended to secure some benefit to that third party, and only if the contracting parties entered into the contract directly for the third party's benefit." *MCI Telecomms. Corp. v. Tex. Utils. Elec. Co.*, 995 S.W.2d 647, 651 (Tex. 1999); *see also S. Tex. Water Auth. v. Lomas*, 223 S.W.3d 304, 306 (Tex. 2007) (noting that "there is a presumption against conferring third-party beneficiary status on noncontracting parties" and that "[t]he intent to confer a direct benefit upon a third party 'must be clearly and fully spelled out or enforcement by the third party must be denied.'" (citation omitted)).

> Ladapo affirmatively pleads that the malfunctioning drawer that injured her when it came all the way out and fell on her foot was a hazard of which she was acutely aware. In fact, she asserts that she had actually complained about this particular defective drawer prior to June 14, 2012, the date it fell and injured her foot. Therefore, Ladapo's attempt in her response to distinguish [*General Electric Co. v. Moritz*, 257 S.W.3d 211 (Tex. 2008),] on the basis that "[a] pre-existing defect was concealed; the face of the drawer was visible to the Plaintiff, but not the mechanism that controlled the drawer from stopping and falling out onto the floor," is negated by her unequivocal allegation that "[o]n several occasions prior to June 14, 2012, [Ladapo] and others had complained to [Target] that a particular drawer was not functioning properly and would pull out and fall." The same is true for her apparent attempt in her response to Target's motion to rely on a concealed and *faulty drawer mechanism*. *See* P. Resp. [4] (referring to "the Plaintiff's claim herein that the drawer mechanism was concealed and faulty, causing injury to her"). Whether the drawer, or, more precisely, the door mechanism was faulty and hazardous, Ladapo knew the drawer was defective and actually complained about it to Target before June 14, 2012.

*Ladapo I*, 2014 WL 6617031, at *2 (some alterations in original) (some citations omitted).

As in *Ladapo I*, the court holds that despite Ladapo's inability to determine, on any given day, whether the drawer was still defective by simply looking at its exterior, the undisputed fact remains that she was "acutely aware" that the drawer had malfunctioned on numerous occasions in the past, that she knew there was a risk that the drawer would come all the way out, and that, consequently, she was aware on June 14, 2012 that the drawer could come all the way out and cause her injury. In fact, Ladapo testified at her deposition that, before the Incident, whenever she opened the drawer, she would "brace [her]self *so it wouldn't come all the way out*." P. App. Ex. E (emphasis added); *see id.* ("Q. Were you bracing yourself

*so it wouldn't come out?* A. I always had to."). *See, e.g., Kilchrist v. Sika Corp.*, 555 Fed. Appx. 350, 352 (5th Cir. 2014) ("Kilchrist contends he had no actual knowledge admix[, a slippery substance,] was present near his truck on the day he fell. He argues that the fact that he knew admix *could* be on the floor does not mean that he actually knew that admix *was* on the floor, and thus that he did not appreciate the risk. This is a distinction without a difference. Kilchrist appreciated the risk admix posed and the substantial likelihood it was present in the facility. . . . We hold that Sika owed no duty to warn Kilchrist of a danger he already appreciated.").[5]

IV

The *Austin* court recognized two exceptions to the general rule that a landowner has a "duty to make safe or warn against any concealed, unreasonably dangerous conditions of which the landowner is, or reasonably should be, aware but the invitee is not." *Austin*, 465

---

[5]Ladapo argues that the drawer "was approved, without stops, and installed, creating an inherent defective condition," and that this "was a defect that would allow the drawer to fail, including, rolling out and completely falling out, just as it did at the many Target stores that [Ladapo] worked at and experienced that failure." P. Br. 5 (bold font omitted). To the extent Ladapo contends that the drawer that injured her was a defective or defectively-designed *product*, she has only pleaded a premises liability claim (not a product liability claim). *See* Am. Compl. ¶ 4(E) ("Each and all of the above and foregoing acts of omission and commission constitute premises liability on the part of Target and were each and all a proximate cause of the injuries and damages sustained by [Ladapo]."). As the owner of the premises, Target's duties to its invitees extended only as far as the court has explained above—i.e., warning about or making safe *concealed* unreasonably dangerous conditions. Evidence that the drawer was defectively designed is irrelevant, in the context of this case, to Target's duties as a landowner.

S.W.3d at 203. The first, not applicable here, is the criminal-activity exception.[6] The second exception—the necessary-use exception—is "an exception that recognizes a landowner's duty to make its premises safe when, despite an awareness of the risks, it is necessary that the invitee use the dangerous premises and the landowner should have anticipated that the invitee is unable to take measures to avoid the risk." *Id.* at 208.

The court will assume *arguendo* that the necessary-use exception applies to an independent contractor like Ladapo.[7] Target moves for summary judgment, *inter alia*, on the basis that Ladapo has failed to produce any evidence that it was "necessary" that she use the defective drawer. Ladapo responds, without citing evidence, that "the facts demonstrate that 'it was necessary that [Ladapo], use the unreasonably dangerous premises; that is, the storage equipment, that contained the large, white drawer." P. Br. 9. She also contends, in the context of her argument that she was not an employee injured during the performance of a specific job at Target's request,

> [b]ecause of Target's failure to provide other options for [Ladapo] to utilize the cosmetics, such as providing another drawer, repairing the drawer; or something equivalent, (Target should have anticipated that [Ladapo] would have to open the

---

[6]That exception "applies in cases involving dangers resulting from a third party's criminal conduct in which the landowner should have anticipated that the harm would occur despite the invitee's knowledge of the risks." *Austin*, 465 S.W.3d at 206.

[7]Target argues that, under *Moritz*, the necessary-use exception does not apply to independent contractors "who perform their own work with their own equipment in their own way." *Moritz*, 257 S.W.3d at 218. Because Ladapo has failed to produce any evidence that it was "necessary" that she use the defective drawer, the court need not decide whether, under Texas law, the doctrine applies to independent contractors.

> large white drawer); [Ladapo] had no choice, that day, in that Target, but to use that drawer[.]

*Id.* at 10. But Ladapo does not cite *any* evidence in support of her contention that it was "necessary" that she use the defective drawer. And the conclusory assertion, both in her response brief and during her deposition, that "it was necessary . . . to use the drawer to do [her] job," P. App. Ex. E, is insufficient to overcome defendant's motion for summary judgment on the necessary-use exception. *See Choe v. Bank of Am., N.A.*, 2014 WL 2438378, at *3 (N.D. Tex. May 30, 2014) (Fitzwater, C.J.) (holding that summary judgment nonmovants' "conclusory assertion—unsupported by a proper citation to the summary judgment record—[was] insufficient to withstand summary judgment"), *aff'd,* 605 Fed. Appx. 316 (5th Cir. 2015); *see also Ramsey v. Henderson*, 286 F.3d 264, 269 (5th Cir. 2002) ("'[C]onclusory allegations, speculation, and unsubstantiated assertions are inadequate to satisfy' the nonmovant's burden in a motion for summary judgment." (quoting *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996) (en banc))).[8] Because Ladapo has failed to create a genuine issue of material fact on the question whether it was "necessary" that she use the drawer to do her job, the court grants Target's motion for summary judgment. *See Little*, 37 F.3d at 1076 (holding that summary judgment is mandatory if plaintiff fails to meet summary judgment burden).

---

[8]Ladapo's allegation in her amended complaint that she stored all of the products she needed to do her job—testers, samples, journal book, makeup brushes, and other supplies—in the large white drawer is not competent summary judgment evidence. *See, e.g., Larry v. White,* 929 F.2d 206, 211 n. 12 (5th Cir.1991). ("Unsworn pleadings, memoranda, or the like are not, of course, competent summary judgment evidence.").

* * *

For the reasons explained, the court grants Target's motion for summary judgment and dismisses this action with prejudice by judgment filed today.

**SO ORDERED**.

June 23, 2017.

_____
SIDNEY A. FITZWATER
UNITED STATES DISTRICT JUDGE